Marie L. Fiala, SBN 79676
mfiala@sidley.com
Nathaniel R. Spencer-Mork, SBN 226886
nspencermork@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California  94104
Telephone:  (415) 772-1200
Facsimile:  (415) 772-7400

Attorneys for Defendants
CALIFORNIA INDEPENDENT SYSTEM OPERATOR

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY  CO., | Case No. '12CV2632 L     JMA |
| Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331, 1441 (FEDERAL QUESTION JURISDICTION)** |
| v. | |
| SAN DIEGO GAS & ELECTRIC COMPANY, ARIZONA PUBLIC SERVICE COMPANY, PINNACLE WEST CAPITAL CORPORATION, IMPERIAL IRRIGATION DISTRICT FINANCING CORP., WESTERN ELECTRICITY COORDINATING COUNCIL, CALIFORNIA INDEPENDENT SYSTEM OPERATOR; and DOES 1 through 10, inclusive, | Related Cases: *Busalacchi v. Arizona Public Service Co.*, Case No. 11cv2083-H-RBB  *Starr Indemnity & Liability Co.v. San Diego Gas & Elec. Co.*, Case No. 12cv2201-H- KSC  **JURY TRIAL DEMANDED** |
| Defendants. | |

NOTICE OF REMOVAL
Case No.

**TO THE COURT, PLAINTIFF, AND ALL COUNSEL OF RECORD:**

1. PLEASE TAKE NOTICE THAT California Independent System Operator (the "ISO") hereby removes the state court action described below[1] from the Superior Court of the State of California in and for the County of San Diego to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441 and 1446.[2]

**COMPLIANCE WITH STATUTORY REQUIREMENTS**

2. On July 5, 2012, Starr Indemnity & Liability Co. ("Starr Indemnity" or "Plaintiff") filed this action in the Superior Court of California, County of San Diego as case number 37- 2012-00077348-CU-PN-SC (the "State Court Action") against SDG&E. The ISO was not named as a defendant in the July 5, 2012 complaint.

3. On September 12, 2012, Plaintiff filed a First Amended Complaint ("FAC") naming the ISO, SDG&E, IID, APS, and WECC.

4. In accordance with 28 U.S.C. § 1446(a), attached as Exhibit A is a true and correct copy of the FAC filed in the State Court Action along with all pleadings and papers filed in the State Court Action. These documents were either served on the ISO or obtained from the online Register of Actions of the Superior Court of California, County of San Diego for the State Court Action.

5. This Notice is timely under 28 U.S.C. § 1446(b). The ISO was served with process on September 30, 2012. Pursuant to 28 U.S.C. §1446(b)(2)(C), earlier-served defendants may consent to the ISO's removal.

---

[1] The other defendants in the state court action are San Diego Gas & Electric Company ("SDG&E"), Arizona Public Service Company, a subsidiary of Pinnacle West Capital Corporation ("APS"), Imperial Irrigation District Financing Corp. ("IID") and Western Electricity Coordinating Council ("WECC"). The ISO, SDG&E, APS, IID and WECC are collectively referred to as "Defendants." The ISO has contacted the other defendants in the state court action to removal to seek their consent. In addition, Plaintiff has represented to Cal ISO that it intends to voluntarily dismiss APS from the State Court Action in the near future. As of the date of filing, the other defendants were not able to take a position on the matter. Pursuant to 28 U.S.C. § 1446(b)(2)(C), defendants served before Cal ISO may consent to Cal ISO's removal. Ninth Circuit law permits Cal ISO to seek consent to removal prior to any remand. *Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011).

[2] By removing this case, Cal ISO does not waive and are not estopped from raising any defenses that were available to them in state court. See *Clark v. Wells*, 203 U.S. 164 (1906); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir. 1993).

6.	Pursuant to 28 U.S.C. § 1446(d), the ISO will promptly provide written notice of removal of this action to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of California in and for the County of San Diego.

## I.
## INTRODUCTION

7.	The claims alleged in the State Court Action concern the September 8, 2011, Pacific Southwest power outage ("September 8 Outage"), which involved a disruption in the interstate transmission of electricity to consumers in California, Arizona, and Mexico. The interstate electric grid is complex, and facilitates power flows among numerous utility and energy companies across broad geographic boundaries, including state and international borders. Pursuant to the Federal Power Act ("FPA") (16 U.S.C. § 791a, *et seq.*), the U.S. Federal Energy Regulatory Commission ("FERC") has a comprehensive regulatory scheme that sets forth the rules, regulations and standards under which utilities, energy companies and other entities sell and transmit energy safely and reliably. Congress has specifically vested jurisdiction in federal courts to consider matters involving the interstate transmission of electricity and the reliable transmission of electricity, including disruptions to energy supplies, throughout the United States and international borders.

## II.
## THE PENDING FEDERAL ACTION

8.	The State Court Action asserts claims for relief against the Defendants based on the September 8 Outage. Plaintiff Starr Indemnity is allegedly the subrogated insurer of a business that suffered losses as a result of the September 8 Outage.

9.	The State Court Action is nearly identical to a federal lawsuit Plaintiff filed against Defendants, regarding the same conduct and alleging the same causes of action. The federal action was filed in this court on September 10, 2012, as Case No. 3:12-cv-02201-H-KSC (the "Federal Court Action"). Attached hereto as Exhibit B is the Complaint filed in the Federal Court Action ("Federal Complaint").

10.     WECC and IID have filed answers in the Federal Court Action.  Plaintiff has stipulated to extend the time for SDG&E and the ISO to respond to the Federal Court Action.  The ISO is informed and believes that Plaintiff intends to dismiss APS from the Federal Court Action.

11.     The State Court Action alleges the same causes of action – 1) Negligence; 2) Conversion; and 3) Unlawful Business Practices – that are raised in the Federal Court Action.  Plaintiff's claims involve the interstate transmission of electricity and disruptions of power impacting consumers in California, Arizona, and Mexico.  These claims raise questions under federal law and therefore must be brought in federal court.

12.     Although the Federal Complaint alleges the same causes of action as the State Court Action, the Federal Complaint alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction "in that the claims herein implicate federal statutes."  Federal Compl. (Ex. B) ¶ 11.

### III.

### STATEMENT OF GROUNDS FOR REMOVAL

13.     The ISO removes this case pursuant to 28 U.S.C. § 1441.  Removal is proper because the federal courts have original jurisdiction of this action under 28 U.S.C. § 1331 and statutory jurisdiction under the FPA (16 U.S.C. § 791a, *et seq.*).  Jurisdiction is proper under 28 U.S.C. § 1331 because this case arises under federal law and jurisdiction is proper under the exclusive jurisdiction provisions of the FPA because Plaintiff's allegations and claims for relief clearly implicate those provisions.

14.     Alternatively, and without waiving defenses under state law, Plaintiff's "state law" claims may arise under federal law because of complete preemption.  Here there is complete preemption of these claims under the FPA because Plaintiff seeks to: 1) enforce duties created by the FPA; 2) enjoin alleged violations of the FPA; and 3) establish and enforce new reliability and operating standards for the bulk-power system all of which are within the exclusive jurisdiction of FERC and/or this Court.  If Plaintiff intends to hold Defendants to standards that conflict with FERC's regulatory regime, then the Plaintiff's claims are preempted by the FPA.

## IV.

## THE REGULATORY LANDSCAPE

15.     Plaintiff's claims presuppose the complex regulatory landscape governing regulation of bulk power electric transmission systems, the events of the September 8 Outage and the pivotal role federal regulatory agencies play in ensuring the reliability and adequacy of the nation's power supply.

  **A.** **The Energy Policy Act and the Resulting Federal Electric Reliability Regulatory Scheme**

16.     Partially in response to the 2003 North American Blackout, Congress amended the FPA through the Energy Policy Act of 2005 ("EPAct") to require federal standards to ensure that the nation's interconnected electrical grid is reliable, adequate and secure.[3]  These standards, called "Mandatory Reliability Standards," are "the planning and operating rules that electric utilities follow to ensure the most reliable system possible." Congress's recognition of the interconnectedness of North America's modern electrical grid is reflected in the Act's provisions.

17.     In the EPAct, Congress amended the FPA to grant FERC jurisdiction over "all users, owners and operators of the bulk-power system . . . for purposes of approving reliability standards . . . . and enforcing compliance."  *See* EPAct section 215(b)(1), codified at 16 U.S.C. § 824o(b)(1).  The ISO qualifies is an "operator" of the bulk-power system.  *See* 16 U.S.C. § 824.  Congress also specifically tasked the Electric Reliability Organization (later established as the North American Electric Reliability Corporation, or "NERC") with the duty of establishing and enforcing reliability standards for the bulk-power system.  *See* EPAct Section 215(a)(2), codified at 16 U.S.C.

---

[3] Section 215(a)(3) of the EPAct defines "reliability standard" as "a requirement, approved by the Commission under this section, to provide for reliable operation of the bulk-power system. The term includes requirements for the operation of existing bulk-power system facilities, including cyber security protection, and the design of planned additions or modifications to such facilities to the extent necessary to provide for reliable operation of the bulk-power system, but the term does not include any requirement to enlarge such facilities or to construct new transmission capacity or generation capacity."   16 U.S.C. § 824o(a)(3).

§ 824o(a)(2).[4]  Once NERC proposes a reliability standard, it is reviewed and approved by the NERC Board of Trustees, which then submits the standards to FERC for approval.  16 U.S.C. § 824o(d).  If approved by these government agencies, the reliability standard becomes legally binding on all owners, operators and users of the bulk power system.  Through the Act, NERC and FERC have been granted legal authority to enforce compliance with NERC Reliability Standards.  *See* 16 U.S.C. § 824o(e).

18. In addition, FERC was instructed to establish regional advisory bodies, which would provide advice to FERC and NERC concerning whether a proposed standard was "just, reasonable, not unduly discriminatory or preferential and in the public interest."  *See* 16 U.S.C. § 824o(j). Today, WECC is the regional advisory body for western North America, covering the provinces of Alberta and British Columbia, the northern portion of Baja California, Mexico, and all or portions of the 14 Western states between, including California.  WECC is responsible for coordinating and promoting bulk electric system reliability in the Western Interconnection and helping to coordinate the operating and planning activities of its members.

**B.     NERC Mandatory Reliability Standards**

19. Today's comprehensive regulatory scheme governing the country's interconnected grid operates in accordance with the 169 NERC Reliability Standards, and their hundreds of requirements and sub-requirements, currently in force.  Mandatory Reliability Standards govern the conduct of utilities affected by the September 8 Outage, including the various defendants in this action, as well as the claims asserted by Plaintiff.

20. FERC approves reliability standards.  *See*, *e.g.*, FERC Order 693, *Mandatory Reliability Standards For the Bulk-Power Sys.*, 118 FERC ¶ 61,218 (2007); *N. Am. Elec. Reliability Corp.*, Facilities Design, Connections, and Maintenance Reliability Standard FAC-013-2, 137 FERC ¶ 61,131 (2011); *N. Am. Elec. Reliability Corp.*, Facility Ratings Reliability Standard FAC-008-3,

---

[4] Section 215(a)(2) defines the "bulk-power system" as "[A] facilities and control systems necessary for operating an interconnected electric energy transmission network (or any portion thereof); and (B) electric energy from generation facilities needed to maintain transmission system reliability." 16 U.S.C. 824o(a)(1)(A) & (B).

1  137 FERC ¶ 61,123 (2011).  FERC requires utilities to incorporate these standards into their FERC

2  tariffs (*see* Preventing Undue Discrimination and Preference in Transmission Service, Order No.

3  890, 72 Fed. Reg. 12,266 (March 15, 2007), FERC Stats. & Regs. P 31,241 (2007), *aff'd by* Order

4  No. 890-A, 121 FERC P 61,297 (2007)), which have the force of a federal regulation.  *See, e.g.,*

5  *California ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 841 (9th Cir. 2004) ("Once filed with a

6  federal agency, tariffs are the equivalent of a federal regulation.").

   **C.     The ISO's Role in Grid Operations**

   21.    The ISO runs the primary market for wholesale electric power and open-access transmission in California and manages the high-voltage transmission lines that makeup approximately 80% of California's power grid .

   22.    The ISO conducts its operations pursuant to the terms of an Electric Tariff filed with and approved by FERC ("ISO Tariff").

   23.    Among other NERC registrations, the ISO is a Planning Coordinator and Balancing Authority for most of California, including the city of San Diego.  It also acts as Transmission Operator for several entities within its footprint, including SDG&E.  As such the ISO operates transmission resources owned by other parties.  The ISO likewise engages in modeling and planning functions in order to ensure long-term grid reliability, as well as identifying infrastructure upgrades necessary for grid function.

   24.    Many aspects of the the ISO's roles in the transmission grid are regulated by Mandatory Reliability Standards.  The ISO must comply with each standard that applies to its registrations as a Balancing Authority, Transmission Operator, Planning Authority, and Transmission Service Provider.  In all, the ISO is responsible complying with for approximately 70 Mandatory Reliability Standards.

   **D.     Investigatory and Enforcement Oversight**

   25.    NERC and FERC have enforcement power and can undertake enforcement actions regarding the Mandatory Reliability Standards.  *See* 16 U.S.C. § 824o(e).  The reliability of the transmission grid is thus actively regulated by NERC and FERC.

26.     Reliability standards have interstate and international importance.  Because the electric transmission grid crosses state and international borders, and disturbances have regional, national and international implications, it is imperative that a coordinated enforcement approach be adhered to.

### E.     FERC and NERC Have Investigated the Pacific Southwest Power Outage

27.     One day after the September 8 Outage, on September 9, 2011, FERC announced that it and NERC had opened a joint inquiry into the outage that is the subject of this lawsuit.

28.     The FERC/NERC Inquiry resulted in the issuance of a joint FERC/NERC Report in April 2012 ("FERC/NERC Report").  The purpose of the report was to determine the causes of the outages and make recommendations for preventing such events in the future.

### V.

### REMOVAL IS PROPER UNDER 28 U.S.C. § 1331 BECAUSE THIS CASE ARISES UNDER FEDERAL LAW

29.     Federal district courts have original jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (the so-called "general" federal question jurisdiction statute).  Whether a case "arises under" federal law for jurisdiction purposes is tested by the "well-pleaded complaint" rule:  Federal courts consider only what necessarily appears in plaintiff's statement of his or her claim, unaided by anything alleged in anticipation or avoidance of defenses the defendant may interpose.  *Taylor v. Anderson* 234 U.S. 74, 75–76 (1914); *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.* 535 U.S. 826, 830 (2002).

30.     Federal question jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg,.* 545 US 308, 313 (2005).  "Substantiality" is determined by considering whether: "1) the case includes a federal agency; 2) the federal question is important; 3) the decision on the federal question will resolve the case; and 4) the decision will affect other cases."  *United States v. City of Loveland, Ohio* 621 F.3d 465, 472 (6th Cir. 2010).

31.     Unlike the local power networks of the past, "electricity is now delivered over three major networks, or 'grids,' in the continental United States. Two of these grids – the 'Eastern Interconnect' and the 'Western Interconnect' – are connected to each other." *N.Y. v. FERC*, 535 U.S. 1, 7 (2002). "[A]ny electricity that enters the grid immediately becomes a part of a vast pool of energy that is constantly moving in interstate commerce." *Id*.

32.     Federal statutory jurisdiction over the interstate transmission of electrical energy emanates from the FPA (16 U.S.C. § 791a et seq.), which "declare[s] that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest." 16 U.S.C. § 824(a). The FPA applies to "the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce . . . . [and] over all facilities for such transmission or sale of electrical energy." 16 U.S.C. § 824(b)(1). It gives FERC "jurisdiction over all facilities for such transmission or sale of electric energy . . . ." 16 U.S.C. § 824(b)(1).

33.     Most fundamentally for this case, FERC is required by the FPA to establish reliability standards that apply to all utilities and users of the interstate transmission grid. 16 U.S.C. § 824o(b)(1). All cases involving alleged violations of the FPA, and FERC orders and regulations implementing the Act, must be heard in federal court. The FPA states in relevant part:

> The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

16 U.S.C. § 825p.

34.     Although Plaintiff has attempted to cast its claims in state-law terms, its claims necessarily implicate the duties and obligations set forth in the comprehensive federal regulations governing the interconnected grid, particularly with respect to the duties they allege Defendants owe in the handling of the interstate transmission of electricity.

35.     Plaintiff acknowledged as much by alleging federal question jurisdiction in the Federal Court Complaint, which alleges that "the claims herein implicate federal statutes, including the Electric Consumers Protection Act and the Energy Policy Acts of 2005 and 1992. . . . Ex, B.,

Federal Compl. ¶11.  The FAC also incorporates by reference the allegations of the first amended complaint in a federal class action arising from the September 8 Outage, *Busalacchi, et al. v. Ariz. Pub. Serv. Co., et al.*, S.D. Cal. No. 12-cv-00298-H (RBB) and attaching that complaint to the FAC. FAC ¶ 24.

36.     The FAC specifically alleges that Defendants failed to plan for transmission system disruptions according to FERC/NERC guidelines.  FAC ¶ 13.

37.     The FAC "incorporates by reference" the FERC/NERC Report as a basis for alleging that Defendants violated laws and/or engaged in unfair conduct.  FAC ¶ 36.

38.     Plaintiff's allegations regarding Defendants' respective culpability (or lack thereof) for the September 8 Outage necessarily involves an evaluation of Defendants' performance under FERC's mandatory reliability standards.  Additionally, the conduct of the ISO, and potentially that of the other Defendants, was governed by provisions of the FERC-approved ISO Tariff.  Moreover, if Plaintiff tries to ignore Mandatory Reliability Standards, the Plaintiff's arguments would inevitably conflict with the Mandatory Reliability Standards in contravention of the FPA.

39.     As the Ninth Circuit has explained, artful pleading will not evade removal:

> (1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question.

*ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000) (internal citations committed).

40.     Removal is thus proper where allegations, though pleaded as state law claims, challenge conduct governed by federal regulations and subject to exclusive federal jurisdiction. Where federal agencies regulate conduct in the exercise of their exclusive jurisdiction, state law causes of action challenging this conduct invade the "exclusively federal domain." *In re Cal. Retail Natural Gas and Elec. Antitrust Litig.*, 170 F. Supp. 2d 1052, 1058-59 (D. Nev. 2001).

41.     As demonstrated above, FERC has a comprehensive set of requirements – numbering into the hundreds – that govern the manner in which utilities plan their transmission systems and react to transmission events in order to ensure reliable service to consumers.  These issues raised by

9
NOTICE OF REMOVAL
Case No.

the Plaintiffs fall squarely within this regulatory scheme and are matters under the jurisdiction of FERC and NERC, as demonstrated by the FERC/NERC Report.  Insofar as Plaintiff's Complaint extends to additional claims beyond matters that are regulated by FERC, this Court would have supplemental jurisdiction under 28 U.S.C. § 1367(a) or 1441(c).  The addition of other state law theories of liability does not divest federal courts of exclusive jurisdiction over matters that Congress requires be adjudicated only in federal court.

## VI.

## REMOVAL IS PROPER UNDER THE FEDERAL POWER ACT BECAUSE PLAINTIFF'S CLAIMS ARE PREDICATED ON MATTERS SUBJECT TO EXCLUSIVE FEDERAL JURISDICTION

42.     The Federal Power Act states in relevant part:

> The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

16 U.S.C. § 825p.

43.     As such, the rule that state law claims cannot be alchemized into federal causes of action by incidental reference has no application when relief is partially predicated on a subject matter committed exclusively to federal jurisdiction.  *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.* 159 F.3d 1209, 1212-13 (9th Cir. 1998) (*citing Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.* 149 F.3d 330, 332 (5th Cir.1998)).

44.     Where relief is "partially predicated on a subject matter committed exclusively to federal jurisdiction," only a federal court can adjudicate the matter and removal is proper.  *Sparta Surgical Corp.*, 159 F.3d at 1213.  Removal is proper here because Plaintiff's allegations of negligence are based on violations of FERC orders, regulations, and tariffs.

45.     Plaintiff's claims under California Business & Professions Code section 17200 specifically identifies conduct addressed in the FERC/NERC Report as a basis for the required element of unfair or unlawful conduct.

46. Moreover, Plaintiff seeks declaratory and injunctive relief predicated on information included in the FERC/NERC Report.

47. Following *Sparta,* two Federal District Courts in California have upheld removals of claims that, like those asserted here, implicated the exclusive jurisdiction provision of the Federal Power Act, 16 U.S.C. § 825(p). *See Cal. ex rel. Lockyer v. Mirant Corp.*, No. C-02-1787-VRW, 2002 WL 1897669, *5 (N.D. Cal. Aug. 6, 2002), *aff'd, sub nom. Lockyer v. Dynegy, Inc., 3*75 F.3d 831, (9th Cir. 2004); *T&E Pastorino Nursery v. Duke Energy Trading & Mktg., L.L.C.,* 268 F. Supp. 2d 1240, 1247 (S.D. Cal. 2003).

48. The ISO's duties as a transmission operator are also governed by the ISO Tariff, which as a FERC-approved tariff has the status of federal law. *See, e.g., Cal. ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 841 (9th Cir. 2004) ("Once filed with a federal agency, such tariffs are the 'equivalent of a federal regulation,'" specifically addresses prior version of the ISO tariff.)

49. Therefore, Plaintiff's claims are predicated on matters subject to the exclusive federal jurisdiction, removal of this action is necessary and appropriate.

## VII.

## **CONCLUSION**

50. Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1446, and 16 U.S.C. § 791a, *et seq.*, the ISO respectfully removes this case from the Superior Court of the State of California to the United States District Court for the Southern District of California.

Dated:  October 30, 2012

Respectfully Submitted,

SIDLEY AUSTIN LLP

By: */s/ Marie L. Fiala*
Marie L. Fiala
Attorneys for Defendant
California Independent System Operator